Shuler v. Sun Life Assurance Company Good morning, Your Honour. May it please the Court. My name is Glenn Cantor. I represent the appellate. I have reserved two minutes for appeals. In the last case, Judge Livingston, you referenced totality of circumstances. That's what this case is about. There is no way that if you look at the totality of circumstances of the key document, which is the release, and the factors surrounding it, and the facts surrounding it, that any reasonable trier of fact could have determined that my client knowingly waived a right to make LTD benefits, or make a claim and a lawsuit for LTD benefits. Let's start with the burden. We know this is an affirmative defense, and the burden falls on Sun Life to prove its claim. We know that because these are ERISA claims, that there is closer scrutiny given to the issue of waiver. We also know that contra preferentum is applied. If it's ambiguous in any way, if this release is ambiguous, if the surrounding facts are ambiguous, the motion for summary judgment should have been denied, and the claim should have gone forward on its merits. We start with the words, right, before we get to the facts. Are the words ambiguous here? I don't think the words are ambiguous. I think the words show there is no waiver. So let me go through that quickly. The question is whether Sun Life is a related or affiliated entity. That's one of the issues anyway. Yes. And when I think of a related or affiliated entity, you know, I think of a subsidiary or a parent company as opposed to an independent insurance company. That was my argument, Your Honor. The average person is going to think affiliated. Well, a holding company, a sister company, a subsidiary, somebody owned by common stockholders, not some third-party insurance company. Affiliated entity has no meaning to a layperson. Now, the district court referenced that, well, this release – affiliated, it's affiliated in the sense that Sun Life is working with Banco. No, they're not working – Why isn't, under the plain meaning of the word affiliated, they have a relationship? Sun Life is the claim fiduciary administrator. Why isn't related in that sense? I don't think it is. I think – Why not? I know you think that, but why not? I know I have to answer the questions, but I don't understand how it could – You don't have to answer my question, but it would help if you answered my question. I'm trying, Your Honor, to say I don't understand how it could be affiliated. They have no common ownership. They don't share profits. And there's a document that says that Banco has no control over what Sun Life does. So I don't know how you would call them affiliated any more than if Banco uses Federal Express or Banco uses UPS or Banco uses a food service. I don't know if it's in the record, but if the plaintiff were to recover, does Banco share any financial responsibility for that? Does it have to pay it or is it – Zero. Completely zero.  Is that in the record? I can't say for sure, but I can say for certain that they purchased insurance for this purpose. So it is 100 percent Sun Life's responsibility to pay these benefits. The only other thing in this entire release that could be looked at as potentially causing a waiver is the fact that it does mention the word ERISA. However, these are ERISA claims that are waived against Banco. There are ERISA claims that were waived against Banco. Can I ask a question? Yes, Your Honor. Just to understand the – let's assume we agree with you that affiliated entities doesn't encompass a third-party insurer providing those benefits for the employer benefit plan. What if this was a self-insured situation and Sun Life was acting as a third-party administrator? Then I lose. Okay. Absolutely, I lose. Although, I would say – and there is no circuit to my knowledge has ruled in this way, but I think they should. These are very important releases. They release employee rights. If employers want to release or get releases of employee benefit plans and past, present, and future claims for employee benefits, all they have to do is say so. It's a seven-page release with thousands of words written in eight-point. All they have to do is put in there. And you are releasing your right to an LCD claim. The release starts off in the first paragraph saying parties and interests. Why isn't Sun Life a party and interest? They're not a named party to this? Well, you don't have to be named. It says Banco and blah, blah, blah, including parties and interests. Why isn't it a party and interest? Because there's nothing in here that indicates they're being released. The claims, the ERISA claims being released would be against Banco. For example, a 502 claim for penalties for not giving plan documents out or a 510 claim for termination of somebody for making their ERISA claims. Those are released against Banco. So I think the release itself is at best ambiguous, and it could have been clarified. And I think this court should say, if you want to release employee benefits, put it in the document. Because going to the next point, Ms. Shuler did know there was an issue, and she asked. What if we decide that it is ambiguous? What would be the next step that would happen in the litigation? Send it back for a decision on the merits, because the court never got the merits of the disability claim. It said, you've waived your claim somehow because you signed this minuscule, de minimis severance agreement. According to the merits, wouldn't there be an issue as to whether under the contract you need to resolve the ambiguity? What do the parties intend, and what do the ambiguous provisions really mean? No, Your Honor. You wouldn't have to go through all that? No. If it's ambiguous, it can't be construed against my client. Contra preferendum. If it's ambiguous, case over on that issue, and it goes back on the merits. Once again, I would say I believe it is imperative that this court issue a decision, a published decision, saying, look, employers, you know how to write a release. Affiliated entity? I mean, the IRS has pages on it. It certainly wouldn't include an insurance company insuring an employee benefit plan. Just add a paragraph so we know. Ms. Shuler asked. She wrote a letter. She said, appendix 38, question 5, important part. Finally, this agreement will not affect my ability to appeal the Sun Life LTD claim. Response. I'm sure your lawyer told you this as part of his or her advice to you, but this agreement should have absolutely no effect on your ability to appeal your LTD. The employer, as far as we know, agrees with us. There's nothing in the record that says the employer thinks they were waiving the appeal right. Sun Life should certainly have no more rights of the employer, which, of course, raises the issue of this was raised for the first time in litigation. It wasn't part of the administrative record. So Ms. Shuler never had the chance to supplement and say, wait, no, no, no. I knew this was not part of my release. I talked to my lawyer. He agreed with me. And even the employer is saying to me, no, it's not releasing. Isn't Sun Life an agent of Benko? No, they're not an agent. If they're an agent, they can ‑‑ Benko can control Sun Life. It says here in appendix 38, we have no control over what Sun Life does. We bought the policy. We don't have any right to have any control over whether Sun Life pays this claim or not. Now, I would say it's very deceptive that the employer responds only to the question that's asked. Exactly. The question is, may I appeal my Sun Life disability denial? Because remember, at the time she's writing this letter to Benko, she's made a Sun Life claim. It's been denied. So she's in the appeal, the pre-litigation request for administrative process stage. That's what she's thinking about. May I proceed with this? And the employer responds, yes, you certainly may. There's two alternatives. One, the employer is saying, yes, you can appeal and, yes, you have all your rights. Or two, the employer's lawyer, for the employer, is thinking, got them. She only asked about, can I appeal my LTD claim? It doesn't ask if she can sue. Well, if that's the case, that's a breach of judiciary duty on the part of the employer, and Sun Life has no more rights than the employer. This case, or this release, is governed in the Pennsylvania law. Governing jurisdiction, I think it's paragraph 17 of the release, appendix 70. The Third Circuit has talked about this issue. It says, once an ERISA beneficiary has requested information from an ERISA fiduciary who is aware of the beneficiary's status and situation, the fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even if that information comprises elements about which the beneficiary has not specifically inquired. That's Bixler v. Central Pennsylvania, 12 F. 2nd at 1292. Ms. Shuler goes to the employer and says, I want to make sure. This is not going to affect my right to appeal the denial, what I'm doing right now. And the employer comes back and says, absolutely, it will not. Now, once again, two options. The employer meant it and also meant, and if they deny the appeal, you can, of course, bring suit. Or the employer thought, well, yeah, you can appeal, but you can't sue under this release. How would that be coherent given the admittedly broad language of what's released as distinguished from who's released? In other words, this isn't a waiver of a right to sue. This is a release of claims. So how would it be coherent to say, oh, but you can continue to pursue your claim. You haven't released your claim as to some life to the extent of the administrative appeal. You've only released it insofar as you take the next step and go to court. I don't understand how that, you've described that as an option that they could have meant, and I guess I'm asking you to tell me how that could coherently be an option. It couldn't be, and that's what I'm saying. It's not a coherent option. The employee is asking a layperson question. May I proceed with my LTD claim? And the claim has been denied. So now I have to appeal it, and then, of course, the next step is, if it's denied again, litigation. The employee is not, there's no way to impose upon the employee the obligation to say, may I proceed with my appeal, and if it's denied, then file a lawsuit. The release would release all claims. So if the release is saying, no, you're not waiving that claim, then you're not waiving any part of that claim. It would make no sense for the employer to say, well, you've released the claim, but we'll let you appeal as an exception, but you can't file suit. Either they've released everything or nothing. And the everything is belied by, yes, you can proceed with your ERISA appeal. And to waive everything is belied by the fact that they have an obligation to tell her. If she's going to waive everything and she's asking about it, don't hold back information. And, once again, this was raised for the first time during the administrative process. I did have time for rebuttal, but I'm not sure if it's gone. You've reserved some rebuttal time. Okay. Thank you, Your Honors. Good morning, employees of the court. Josh Packrack. I represent the appellee, Sun Life. I'd first like to address the issue that counsel is saying the employer had an obligation to be truthful. The employer had an obligation to give more information. My client's not the employer. My client wasn't provided with this release, even though this happened before the appeal, and they asked for information from the client. So he can't blame my client for something that was hidden from it by his client during the entire process. Is that evidence of the party's intent in entering into the release agreement? I'm sorry, Your Honor? Even assuming Wabenko is not your client, doesn't the statement from Wabenko's lawyer provide some evidence of what the party's intended by entering into the release agreement? Well, I think there are a few problems with their argument on that point. First of all, it shows that she was aware that potentially Benko, this release, applied to Sun Life by raising the subject. She knew it potentially did. Well, maybe that's true, and then she was told, in essence, that it does not. But that leads to the second problem, Your Honor. This release has an integration clause that counsel completely ignores. This clause states in paragraph 15, it's SA 253 of the record. That is the final, complete, and only agreement between the parties. And it supersedes any and all prior understandings and agreements. Well, that may be so, but what happens if we decide the release is ambiguous? Then the district court, putting aside the argument about contra preferendum, but the district court would look at principles of contract construction, which would also include extrinsic evidence, perhaps, of the party's intent. And could they not look at what the attorney said? Correct. I agree that, well, no, I don't think they can. I think that precludes that argument. If they find ambiguity in certain parts, yes, they don't jump right to, the judge doesn't jump right to the disability claim. It has to hold a hearing on the understanding. Is there ambiguity in the phrase related or affiliated entity? Well, I don't think there is, because as Your Honor said, affiliated means working with. But as Chief Judge Livingston said, there's a more important, and I think it's the one that really applies here, and that's agent. So you look at the relationship between the two. The word agent refers to an agent of the affiliated or related entity. It doesn't actually say an agent of Benko. My reading of it is that it is an agent, that it is one of the subsidiaries, related or affiliated entities, employees, agents. So it is separate, Your Honor, and that's on page 247 of the supplemental appendix. The line above that, it says all of its parents, subsidiaries, related or affiliated entities, and their respective offices, et cetera, et cetera, agents. So it seems to be referring to agents of related or affiliated entities, parents, subsidiaries. Am I reading it incorrectly? I do read it differently, Your Honor. I apologize. I read it as Benko by itself and its. So it's not only saying affiliated agents, et cetera, it's referring to Benko and those other entities. And when you look at agents- You're saying it refers to Benko and Benko's agents? Correct. And its affiliates and its other entities that are identified. Can I try to understand just the scope of your argument? If the plaintiff here had been injured because of a defective stairway in the building where her employer, Benko, leased space from a third-party landlord, would this release her claims against that third-party landlord for the personal injury? No. But there's a lot different relationship here, Your Honor. So as an agent, what's an agent mean? You're doing business on behalf of somebody else. Benko is- Let me give you a better hypothetical. Okay? Let me give you a better hypothetical. There's a third-party payroll processor that Benko uses to pay her paychecks. And her last paycheck, the third-party payroll processor, after they take in the money from the account of the employer, applies it to the wrong account. They apply it to somebody else's account. Does this release her claim against that third-party payroll provider, which executes the payroll function for the employer? I think this deals with a benefit. That deals with something totally different. And she's entitled to that money. She's not entitled to the benefit here. Isn't that circular? I don't think it's analogous. To me, I look at the fact that Benko established a benefit plan. It retained, as Judge Shin said, it retained Sun Life here as its claim administrator. And it also said, Sun Life, you're a fiduciary of this. You're our fiduciary. Well, sure, but don't you think the payroll processing company, the bank that's doing that, is a fiduciary for purposes of the payroll processing? No, it's actually the IRS has described that as a clerical duty, which is not a fiduciary responsibility. So there is a distinction. My client is named as a fiduciary. And I think it's quite telling, Judge Robinson, because you would ask counsel if it mattered if this was a TPA or an insured plan. The statute makes no distinction. It defines employee benefit plan as insured or self-funded. If you're a claim administrator, and counsel said, I lose if they're a TPA, I lose. Well, guess what? There's no difference. So he does lose. Well, you're describing the ERISA statute, right? And one of the things that's tricky about this is we're interpreting under state law a general release that encompasses lots of things, including but not limited to ERISA claims. And I guess I'm wondering just how much we then draw from the ERISA statute to interpret the meaning of the terms in that contract. She hired a disability lawyer to handle her ERISA claim. So he would have known that party and interest means a fiduciary. So it does. It is. We read the phrase party and interest in this agreement with the background of the ERISA statute in mind. How do we know that? Because, again, she hires an ERISA disability lawyer to represent her. And that person would have known this or should have known this. But that's only one small part of it. That only goes to the ear. I'm setting aside what she did. I understand. Just interpreting the agreement. How do we know that the party and interest reference we should read with the background understanding of ERISA? Simply because it obviously applies to ERISA claims? I think that's part of it, that she hires a disability lawyer. To be perfectly honest, I prefer the agent argument. It's more than just ERISA claims, right? It's not just ERISA claims that issue. I mean, looking at the release as a whole. Yes, the release itself. Yeah, and that's part of the problem here. It's so broad. It specifically identifies ERISA. It identifies claims. It identifies litigation, lawsuits. And I think it's important to note that this release was so broad purposely. And that doesn't make it ambiguous. It specifically said that any other entity, third party. It may be very broad, but it doesn't clearly, it doesn't explicitly refer to the insurance company, right? It doesn't, but it says that Benko could transfer the rights under this release to any third party. So that's in paragraph 19, I believe. Transfer the rights of the settlement agreement writ large, right? Yes. They can't go and immunize any person. They couldn't go to some other person with a claim that she's got a claim against and say, oh, I hereby immunize you. Well, but this is specific to Benko's plan. This is specific to Benko's agent. So I think if you look at the fact that this, I think it covers under agent. I think Sun Life is covered under affiliate. But then when you look at also, she could have assigned this to, or Benko could have assigned this to anybody. She knew that there was this possibility. That's why she asked her attorney and Benko, does this preclude me from bringing an appeal? Now, then you look at the integration clause and it says you can't rely on those prior understandings. Right. I mean, there's a circularity here, right? I don't think you would contend that the, if it's clear, if it's unambiguous, then the integration clause becomes a relevant factor in saying we're not going to enforce extrinsic promises. If it's ambiguous, you're not arguing that extrinsic representation about what the contract does or doesn't mean from the other party to the contract is not relevant to evaluating the mutual intent. I think that parts of it could be subject to extraneous evidence. But when, extrinsic evidence, but when you look at the fact that here, it's specifically saying prior understandings don't matter. They don't matter. She, there's one thing- Can I shift to that just a minute of time on this party and interest? I'm trying to figure out whether that's a little bit of a red herring. Parties and interests are listed in the sort of description of who's implicated by the contract, which could just be a catch-off for people who are covered by the contract. But the actual release provision doesn't say anything about parties and interests. It has the same laundry list, parent, subsidiaries, related or affiliated entities. It doesn't say anything about parties and interests. Isn't that the operative clause? And doesn't that render the parties and interests conversation irrelevant? No, because it's defining what Benco, who Benco is. But that definition includes all of those other people on the list, right? Precisely. So you wouldn't have actually needed to say anything other than voluntary and foreverly releases Benco, because you've defined, on your argument, you've defined Benco above to include its directors, officers, shareholders, partners, related entities, et cetera. So I guess what's now happening is you're saying, yes, in the actual operative release language, they chose to list every single one of the other things from the definition of Benco except for parties and interest. I don't read it that way. I read it as being included. This isn't comprehensive. This is such a comprehensive. It's spelled since suspenders. They wanted to make sure, and that's why. What's weird is that the suspenders apply to every other conceivable relationship except for the party and interest. And that's what's making me wonder whether parties and interest is just shorthand to whoever is protected by this contract. Well, then you go to agent or affiliate. There are so many others. And if I may, Your Honor, there's one thing that could have protected her. She knew that her prior understanding or the prior statement by Benco wasn't integrated into this agreement, into this release. It's a broad, broad release that could be sent to any third party, and she didn't put anything into this. She could have. She negotiated terms. All she had to say was put into this release that it doesn't apply to Sun Life. I've seen those before in cases.  She had an attorney. That's one of the lanyard factors. That is an important lanyard factor. How do you weigh that factor? And I think we have to accept for the purposes of, in this posture, we have to accept her representation that her attorney told her that it didn't operate as a release of her claim against Sun Life. So how do we weigh the factor of whether she had an attorney if the record tells us that the attorney agreed with the position she's now taking? Well, it's not in the record what her attorney believed. What the fact is- What's in the record is what she said her attorney told her. There are some credibility issues with her. I'll leave it at that. Some big credibility. We don't resolve credibility issues at this stage, right? Yeah. So, but the lanyard factor is not whether the attorney gave her good advice, is it? The lanyard factor is whether she had an attorney and whether the person being released, Benko here, the one who made the agreement, recommended that she speak to her attorney. You heard Mr. Cantor read that language. They did both. So both those. And the district court here concluded that these factors overwhelmingly support the fact that she knowingly and voluntarily entered into this. Again, the test isn't whether she made the best decision. It isn't even whether her attorney messed up. She knowingly and voluntarily. If I may, and I know I'm running a little over, I just want to address the waiver argument the council made, which is interesting because they, in fact, have waived making that argument by not presenting it in the district court. But more importantly, that applies to claim-based defenses. This is not a claim-based defense, such as is she disabled? Does this policy provision apply? This is like a statute of limitations. It's a legal defense, and it has to be included as an affirmative defense, which we did. And I finally would point out on this issue that this court does allow even claim-based new defenses, but says that they are reviewed de novo, which is what the district court here did. Your Honors, we believe there was knowing, voluntary relinquishment, and that it does apply to sunlight. Thank you, Your Honors. We'll hear rebuttal. Thank you, Your Honor. I could probably go on for an hour, which I doubt this court's going to give me. However, this panel sitting back here are going, is this, is it not ambiguous? What does affiliated mean? Part of the interest is referenced here. It's not referenced there. How can this agreement be anything but ambiguous to a layperson when it doesn't say, and by the way, you are waiving your claims against sunlight. Mr. Bachrach is correct. There's an integration clause. My client goes to the employer and says, I have questions. The employer could have said, read it. It is what it is. If you want to amend it, we can do that. The employer doesn't do that. They say, we're going to answer your questions. And they do. The employer says, no, you have not waived this right to LTD. I just think, and as I said, I could go on for a long time. The simplest thing here, if employers want to get a severance release, and they want that release to waive employee benefits, put it in there. It's a really simple thing to do. You've got a multi-billion dollar corporation on the one hand. You've got Ms. Shuler on the other. But who is the one who is supposed to know what this release really encompasses and what they intended to release? Sun Life is here. They don't know what this meant. They just wanted to mean that to avoid addressing this on the merits. And that's, I think, the last point I'll make, is ERISA is an equitable statute, and the intent here is to allow Ms. Shuler to have her disability claim heard on the merits. This is a technical defense based on an ambiguous release that they're not even a party to. They're not mentioned. There's no consideration given by them for this release. They should not be allowed to escape even having the claim heard on the merits by this technical argument. And I will thank you. Thank you both, and we'll take the matter under advisement.